UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

Case No. 22-CR-20370-GAYLES/TORRES

UNITED STATES OF AMERICA,

   *Plaintiff,*

vs.

GRAYLAN STEVE JOHNSON,

   *Defendant.*
_____/

### REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS SUPERSEDING INDICTMENT

This matter is before the Court on Graylan Steve Johnson's ("Defendant" or "Mr. Johnson") amended motion to dismiss his criminal indictment. [D.E. 24]. Defendant has previously been convicted of at least three violent felonies or serious drug offenses and thus qualifies as an armed career criminal pursuant to § 924(e)(1). [D.E. 15]. The Superseding Indictment charges Mr. Johnson with "knowingly possess[ing] a firearm and ammunition in and affecting interstate commerce, knowing that he had been previously convicted of a [felony]…in violation of [18 U.S.C. § 922(g)(1)]." [D.E. 15]. In light of the Supreme Court's recent decision in *New York State Rifle & Pistol Ass'n, Inc. v. Bruen*, 142 S. Ct. 2111 (2022), Defendant argues that 18 U.S.C. § 922(g)(1) is facially unconstitutional, infringing on his fundamental Second Amendment right to "keep and bear Arms." U.S. Const. amend. II. The

United States of America (the "Government") timely filed a Response in Opposition to the motion on November 28, 2022. [D.E. 37]. The Amended Motion is now ripe for disposition.[1] After careful consideration of the Motion, the record, the relevant authorities, and for the reasons discussed below, Defendant's Motion should be **DENIED**.

## I.     APPLICABLE PRINCIPLES AND LAW

A motion to dismiss an indictment is governed by Federal Rule of Criminal Procedure 12(b), which allows a defendant to challenge an indictment on various grounds, including failure to state an offense, lack of jurisdiction, or constitutional reasons. *See United States v. Kaley*, 677 F.3d 1316, 1325 (11th Cir. 2012).

An indictment "may be dismissed where there is an infirmity of law in the prosecution; a court may not dismiss an indictment, however, on a determination of facts that should have been developed at trial." *United States v. Torkington*, 812 F.2d 1347, 1354 (11th Cir. 1987). Further, "[t]he sufficiency of a criminal indictment is determined from its face." *United States v. Critzer*, 951 F.2d 306, 307 (11th Cir. 1992). The indictment's allegations are assumed to be true and are viewed in the light most favorable to the government. *See Torkington*, 812 F.2d at 1354.

## II.     ANALYSIS

We address this trending constitutional challenge to Section 922(g)(1). Defendant's motion argues that the Supreme Court's recent decision in *Bruen* renders

---

[1] The Honorable Darrin P. Gayles referred the Amended Motion to the Undersigned for a Report and Recommendation. [D.E. 41].

Section 922(g)(1) unconstitutional on its face. Specifically, Defendant asserts that, despite being a convicted felon, under *Bruen's* new analytical framework, at step one, "the Second Amendment's plain text covers Mr. Johnson's act of possessing a handgun." [D.E. 24 at 7]. In support of this proposition, Defendant argues he is among "'The People' protected under the Second Amendment," [D.E. 24 at 7], and that the phrase refers to "'all members of the political community.'" [D.E. 24 at 8 (quoting *Dist. of Columbia v. Heller*, 554 U.S. 570, 580 (2008) (emphasis removed))]. Defendant further contends that section 922(g)(1) also fails step two of the *Bruen* test as it "is not consistent with the nation's historical tradition of firearm regulation." [D.E. 24 at 10]. As he must, Defendant largely ignores the Supreme Court's dicta in *Heller* regarding the presumptive validity of "longstanding prohibitions on the possession of firearms by felons;" 554 U.S. at 626, and its reiteration in *McDonald v. City of Chicago* that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" 561 U.S. 742, 786 (2010).

      The Court finds Defendant's arguments unpersuasive for two reasons. First, Defendant's theory that his possession of a firearm is conduct protected by the Second Amendment fails as this argument has been foreclosed by binding Eleventh Circuit precedent. Since 2010, the Eleventh Circuit has expressly, and repeatedly, stressed that convicted felons fall within a class of individuals that are "disqualified from the exercise of Second Amendment rights" and, as such, are unprotected by the right to

3

keep and bear arms. *United States v. Rozier*, 598 F.3d 768, 771 (11th Cir. 2010) (internal quotation marks omitted).

Defendant instead focuses on a mischaracterization of the 2022 case *United States v. Jimenez-Shilon*, claiming the case stands for the proposition that "there is [rightly] *no* felon/non-felon distinction within the term 'people' in the Second Amendment" while and glossing over 12 years of Eleventh Circuit precedent in the process. [D.E. 24 at 8 (citing 34 F.4th 1042, 1046 (11th Cir. 2022))]. Claiming that Eleventh Circuit precedent and *Bruen* itself recognize no distinctions within the term "people," and since the weapon Defendant possessed was a handgun, he summarily insists that he "has satisfied step one of the *Bruen* analysis." [D.E. 24 at 10]. Defendant' argument falters on this first step because he has not satisfied that threshold.

Second, even assuming that Defendant's conduct is protected by the right to bear arms as articulated in *Bruen*, Defendant's motion should still be denied because the government has proffered sufficient historical evidence to support the conclusion that section 922(g)(1) is consistent with this nation's historical traditions on firearm regulations and satisfies *Bruen* review.

### A. *Eleventh Circuit Precedent Dictates that Defendant is Not Protected by the Second Amendment*

This Court is bound by precedent from the Eleventh Circuit "unless and until [such precedent] is overruled or undermined to the point of abrogation by the

Supreme Court. . . ." *United States v. Archer*, 531 F.3d 1347, 1352 (11th Cir. 2008) (citing *Smith v. GTE Corp.*, 236 F.3d 1292, 1300 n.8 (11th Cir. 2001)). Accordingly, we are bound to follow Eleventh Circuit precedent that, relying on *Heller* and *McDonald*, bars Defendant's argument by categorically excluding a felon's possession of a firearm from the range of conduct that is presumptively protected by the Second Amendment. *See Atlantic Sounding Co. v. Townsend*, 496 F.3d 1282, 1284 (11th Cir. 2007) (explaining that "a later panel may depart from an earlier panel's decision only when the intervening Supreme Court decision is 'clearly on point,'" and that when only the reasoning, and not the holding, of the intervening Supreme Court decision "is at odds with that of our prior decision" there is "no basis for a panel to depart from our prior decision.").

Defendant does not allege that *Bruen* has fundamentally disrupted Eleventh Circuit precedent, maybe, because *Bruen* has not.  Step one of *Bruen*'s analysis preserves *Heller*'s initial inquiry: whether the conduct at issue falls within Second Amendment Protection.  *See Bruen*, 142 S. Ct. at 2126 (noting that step one is "[i]n keeping with" *Heller*).  As we explain below, the relevant Eleventh Circuit precedent (which utilizes a *Heller/Bruen* analysis) that governs this case has established that felons do not have a Second Amendment right to possess firearms. *See Rozier*, 598 F.3d at 771.  That precedent governs this case.

### 1. *Supreme Court Precedent in* **Heller** *and* **McDonald**

In *Heller*, the Supreme Court undertook its "first in-depth examination of the Second Amendment." *Heller*, 554 U.S. at 635. At issue was the constitutionality of

the District of Columbia's ("D.C.") ban on the possession of handguns in the home. *Id.* at 573. The respondent in Heller was a D.C. law enforcement officer who was permitted to carry a handgun while on duty but was not permitted to register or keep a handgun in his D.C. home. *Id.* at 575-76. The Supreme Court held, "on the basis of both text and history, that the Second Amendment conferred an individual right to keep and bear arms." *Id.* at 595. The Court explicitly stated that the Second Amendment secures an individual right to bear arms for self-defense, and not just for use in a militia, as "the inherent right of self-defense [is] central to the Second Amendment right." *Id.* at 628.

The Supreme Court cautioned, however, that "the right secured by the Second Amendment is not unlimited" and recognized that this right "was not a right to keep and carry any weapon whatsoever in any manner whatsoever and for whatever purpose." *Id.* at 626. And while the Court did not "undertake an exhaustive historical analysis. . .of the full scope of the Second Amendment," it expressly instructed that "nothing in [its] opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons and the mentally ill. . . ." *Id.* The Court deemed these prohibitions as "presumptively lawful regulatory measures" that fall within "exceptions" to the right to bear arms. *Id.* at 627 n.26, 635. Moreover, throughout its ruling, the Court stressed that the right of possession embodied in the Second Amendment is "the right of law-abiding, responsible citizens to use arms in defense of hearth and home," and suggested that certain individuals, such as "felon[s]" and the "insane," are disqualified from exercising Second Amendment rights. *Id.* at 631,

6

635; *see also id.* at 620 ("We described the right protected by the Second Amendment as 'bearing arms for a lawful purpose'").

Two years later, in 2010, the Supreme Court struck down two Illinois handgun bans in *McDonald v. City of Chicago*, holding that the Second Amendment is fully applicable to the States through the Fourteenth Amendment. *E.g.*, 561 U.S. 742 (2010). In so doing, a plurality of the *McDonald* Court repeated its "assurances" that *Heller* "did not cast doubt on such longstanding regulatory measures as 'prohibitions on the possession of firearms by felons.'" *Id.* at 786 (quoting *Heller*, 554 U.S. at 626).

### 2. *Eleventh Circuit Precedent Applying Heller*

Following *Heller*, the Eleventh Circuit was presented with the very same Second Amendment challenges raised here. First, in *United States v. Rozier*, the Eleventh Circuit upheld the constitutionality of section 922(g)(1) and ruled that convicted felons are not protected by the Second Amendment right to keep and bear arms. 598 F.3d 768 (11th Cir. 2010) (per curiam). Rozier, like Johnson, had previously been convicted of a felony but Rozier still challenged his conviction on the ground that his possession of a handgun, as in *Heller*, took place "in the home and for the purposes of self-defense." *Id.* at 769-70. In rejecting Rozier's argument, the Court held that regardless of the weapon's purpose, Rozier was not qualified to possess a firearm under any circumstances by virtue of his "status as [a] felon[]." *Id.* at 770-71. Citing to *Heller*'s instruction that "nothing in our opinion should be taken to cast doubt on longstanding prohibitions on the possession of firearms by felons," and to the Supreme Court's reference to individuals "disqualified from the exercise of Second

7

Amendment rights," the Eleventh Circuit held that section 922(g)(1) is "a constitutional avenue to restrict the Second Amendment rights of certain classes of people. *Id*. Rozier, by virtue of his felony conviction, falls within such a class." *Id*. (quoting *Heller*, 128 S. Ct. 2783, 2817). Accordingly, the Court determined that the circumstances surrounding Rozier's possession of a firearm were irrelevant and upheld his conviction under the statute. *Id*. at 772.

Five years later in *GeorgiaCarry.Org, Inc. v. U.S. Army Corps of Engineers*, the Eleventh Circuit again rejected a Second Amendment challenge, this time arising under 36 C.F.R. § 327.13, a federal regulation that prohibited the possession of loaded firearms or ammunition on property managed by the U.S. Army Corps of Engineers. 788 F.3d 1318, 1320 (11th Cir. 2015). There, the Court took the opportunity to reiterate the central holding of *Rozier* (*e.g.*, that convicted felons are part of a class disqualified from the exercise of Second Amendment rights) and to emphasize its binding nature in subsequent Second Amendment cases within the Circuit. In its opinion, the Court explained that the *Rozier* court "relied on *Heller's self-limiting dictum*" in reaching its holding. *Id*. at 1324 (emphasis added). Notably, the *Rozier* court stated, "to the extent that this portion of *Heller* limits the Court's opinion to possession of firearms by law-abiding and qualified individuals, it is not dicta." *Rozier*, 598 F.3d at 771 n.6 (citing *Denno v. Sch. Bd. Of Volusia Cty., Fla.*, 218 F.3d 1267, 1283 (11th Cir. 2000); *see also United States v. White*, 593 F.3d 1199, 1206 (11th Cir. 2010) (observing that the Eleventh Circuit "must follow" Supreme Court dictum). Finding the reasoning of its prior cases instructive, this decision then rejected

8

defendant's reliance on *Heller*, observing that the Corp's firearms regulation did not extend nearly as broadly as the D.C. regulation at issue in *Heller*, which meant that the § 327.13 regulation survived Second Amendment review.

Two years later, in a case of the unlicensed sale of firearms through the dark web, *United States v. Focia*, 869 F.3d 1269 (11th Cir. 2017), the Eleventh Circuit—*again*—reiterated its understanding of *Heller* as supportive of the view that disarming convicted felons "comport[s] with the Second Amendment because they affect *individuals or conduct unprotected* by the right to keep and bear arms." *Id.* at 1286 (emphasis added). The Court noted that "[a]ccounting for these types of longstanding prohibitions, . . .we have [] upheld the constitutionality of § 922(g)(1) because statutes disqualifying felons from possessing a firearm under any and all circumstances do not offend the Second Amendment[.]" *Id.* at 1286 (citing *Rozier*, 598 F.3d at 771) (quotation marks omitted). The Court observed that this line of precedent "provides examples of laws that do not substantially burden the Second Amendment," and concluded that section 922(a)(5), much as sections 922(g)(1) and (9), survives constitutional scrutiny. *Id.* at 1286-87.

Most recently, in a case decided in early 2022, *United States v. Jimenez-Shilon*, the Court once again echoed *Rozier*'s holding when a defendant section 992(g)(5)(A), a statute prohibiting the possession of firearms by illegal aliens. 34 F.4th at 1043. In rejecting defendant's challenge, the Court avoided addressing the question of whether

9

an illegal alien in defendant's position (one with extensive ties to the U.S.) could be among "the people" protected by the Second Amendment. *Id.* at 1045.[2]

Instead, the Court found the inquiry unnecessary by holding that even if defendant were among "the people," section 922(g)(5)(A) was nevertheless constitutional because "illegal aliens" fall within a "group[] of people" who are disqualified from the exercise of Second Amendment rights. *Id.* at 1044-45. Relying on *Heller* and *Rozier*, the Eleventh Circuit foreclosed the type of argument raiserd here by reasoning that, "as both the Supreme Court and this Court have observed, even individuals who are indisputably part of 'the people,' *such as dangerous felons…*, [may] *not partake* of that pre-existing right and, therefore, may be prohibited from possessing firearms without offending the Second Amendment." *Id.* at 1046 (emphasis added) (citing *Heller*, 554 U.S. at 626; *Rozier*, 598 F.3d at 770-71). The opinion then proceeded to the second prong of the *Bruen* analysis and concluded that regulations disarming illegal aliens are consistent with the Second Amendment's text and history. The Court thus affirmed the denial of that defendant's motion to dismiss.

Pursuant to this thread of controlling precedent, we are compelled to reject Defendant's claim that his "act of possessing a handgun" is covered by the "Second

---

[2] This is notable because Defendant relies on *Jimenez-Shilon*, 34 F.4th at 1046, for the proposition that "felons [are] 'indisputably part of 'the people' under the Second Amendment." The decision, however, does not stand for that proposition. And of course, even if that was the case, this would not end the inquiry as Defendant suggests. [D.E. 24 at 7] (internal quotation marks omitted).

Amendment's plain text." [D.E. 24 at 7]. As we have demonstrated, this argument has been barred by the Eleventh Circuit's repeated emphasis on the excommunication of convicted felons from the presumptive protections afforded "the people" under the Second Amendment. "[T]he Second Amendment's text…codified what the *Heller* Court called a 'pre-existing right'…[which] extended [] to some categories of individuals, but not others." *Jimenez-Shilon*, 34 F.4th at 1044 (quoting *Heller*, 554 U.S. at 592). In this circuit, even after Bruen, the law is settled that this category of individual, a convicted felon, falls outside that protected sphere. The motion can be denied on that basis alone.

### B. Under **Bruen**, *Section 922(g)(1) is Consistent with The Nation's History and Tradition*

Assuming for the sake of argument that Defendant's status as a non-law-abiding citizen is embraced by the Second Amendment, section 922(g)(1) would still be a constitutionally enforceable statute because the Government has satisfied step two of *Bruen*'s analysis by demonstrating that the statute is consistent with this Nation's historical tradition of firearm regulation. As the Eleventh Circuit has emphasized time and again, "being a member of 'the people' to whom the Second Amendment applies as a general matter is a necessary condition to enjoyment of the right to keep and bear arms, *but it is not alone sufficient.*" *Id.* (emphasis added). Section 922(g)(1) is also consistent with the nation's historical tradition of firearm

11

regulation, as discussed below, which means that the motion can be denied on this basis as well.

On this score, we have reviewed the historical record provided by the Government in its Response in Opposition, [D.E. 37]. We find this record to be comprehensive and persuasive. First, the Government's brief cites to sources from Colonial America, the founding era, and Antebellum America. Such historical evidence supports the Government's contention that the historical record is consistent with the ban in section 922(g)(1) in a manner contemplated by *Bruen*. *See Bruen*, 142 S. Ct. at 2127 (emphasizing that the Second Amendment memorialized "pre-existing" rights and that the history of the late 1600's and colonial American history is instructive in determining the relevant historical references); *see also id.* at 2136 (stating "[c]onstitutional rights are enshrined with the scope they were understood to have when the people adopted them.") (quoting *Heller*, 554 U.S. 634-35) (emphasis in original). In that vein, it is important to note that several of the colonies had laws disarming felons, even of the non-violent varietal, such as those who defamed acts of Congress or refused to defend the colonies. *Folajtar v. Att'y Gen. of the U.S.*, 980 F.3d 897, 908 & n.11 (3d Cir. 2020) (surveying colonial laws from Pennsylvania, Connecticut, and Massachusetts). Furthermore, Pennsylvania, New Hampshire, and Massachusetts, "at their ratification conventions…proposed amendments limiting the right to bear arms to both law-abiding and 'peaceable' citizens." *Id.* at 908.

To establish a history of felon firearm regulation, the Government points to numerous Treatises, Law Review articles, and cases, which decidedly refute Defendant's claim that "there was nothing [no regulation] before the twentieth century." [D.E. 24 at 18]. The Government quotes Thomas M. Cooley's *A Treatise on the Constitutional Limitations Which Rest Upon the Legislative Power of the States of the American Union* 29 (1st ed. 1868)—itself cited by *Heller*, 554 U.S. at 616—to show that "some classes of people were 'almost universally excluded' from exercising certain civic rights, including 'the felon, on obvious grounds.'" [D.E. 37 at 8]. Furthermore the Government finds support in the Eighth Circuit, in *United States v. Bena*, that recognized the Second Amendment incorporates "a common-law tradition that permits restrictions directed at citizens who are not law-abiding and responsible" and "'did not preclude laws disarming…criminals.'" 664 F.3d 1180, 1183 (8th Cir. 2011) (quoting Don B. Kates, Jr., *The Second Amendment: A Dialogue*, 49 Law & Contemp. Probs. 143, 146 (Winter 1986)).

Similarly, the First Circuit has understood the right to bear arms in the Founding era as "'a civic right…limited to those members of the polity who were deemed capable of exercising it in a virtuous manner.'" *United States v. Rene E.*, 583 F.3d 8, 15 (1st Cir. 2009) (quoting Saul Cornell, *"Don't Know Much About History": The Current Crisis in Second Amendment Scholarship*, 29 N. Ky. L. Rev. 657, 679 (2002)).

Continuing a canvassing of the Circuits, the Fourth Circuit has found that "[f]elons 'were excluded from the right to arms'" in or around the founding era,

"because they were deemed unvirtuous." *United States v. Carpio-Leon*, 701 F.3d 974, 979-80 (4th Cir. 2012) (quoting Reynolds, *A Critical Guide to the Second Amendment*, 62 Tenn. L. Rev. at 480). And the Seventh Circuit has pointed out that "*Heller* identified as a 'highly influential' 'precursor' to the Second Amendment the Address and Reasons of Dissent of the Minority of the Convention of the State of Pennsylvania to Their Constituents." *United States v. Skoien*, 614 F.3d 638, 640 (7th Cir. 2010) (en banc) (quoting 554 U.S. at 604). That report explicitly recognized impositions of firearms restrictions on convicted criminals, stating "citizens have a personal right to bear arms 'unless for crimes committed.'" *Id.* (quoting 2 Bernard Schwartz, *The Bill of Rights: A Documentary History* 662, 665 (1971)).

Finally, of the states whose state constitutions (ratified during the founding era) "entitled their citizens to be armed…[, many] did not extend this right to persons convicted of crime." *Skoien*, 614 F.3d at 640. In light of this documented history, we agree that "the right to bear arms is analogous to other civic rights that have historically been subject to forfeiture by individuals convicted of crimes, including: the right to vote, *Richardson v. Ramirez*, 418 U.S. 24, 56 (1974); the right to serve on a jury, 28 U.S.C. § 1865(b)(5); and the right to hold public office, *Spencer v. Kemna*, 523 U.S. 1, 8-9 (1998)." [D.E. 37 at 10].

Even if none of the above historical examples are direct corollaries to section 922(g)(1), *Bruen* reminds us that there need not be an exact historical analogue. The issue is not, as Defendant would frame it, whether there were any laws disarming felons at the time of the founding in the *exact same manner* that section 922(g)(1)

disarms felons. As Justice Thomas made clear, "even if a modern day regulation is not a dead ringer for historical precursors, it still may be analogous *enough* to pass constitutional muster." *Bruen*, 142 S. Ct. at 2118. (emphasis added).

*Bruen* dictates that we must decide whether the felon firearm ban at issue in this case is "consistent with the Nation's historical tradition of firearm regulation." *Id*. at 2131. Historical analysis of Colonial America, the founding era, and Antebellum America clearly confirms that there were several instances of the disarming of non-law-abiding or non-virtuous citizens at these times—so close to, and simultaneously with—the ratification of the Second Amendment. The Court finds that these examples are sufficient to show a tradition of limiting the possession of firearms to that class of citizens society, at that time, considered virtuous. The Court is confident it can rely on the historical record, discussed above, to find that today's federal prohibition on armed convicted felons found in section 922 (g)(1) is consistent with the historical limitations of the Second Amendment. And while this provision may not be the "historical twin" of these historical references, it need not be. *See Bruen*, 142 S. Ct. at 2133. (emphasis removed).

Because Section 922(g)(1) is "consistent with the Second Amendment's text and historical understanding," the Court finds that the statute is constitutional. *Id*. at 2131. Accordingly, Defendant's Amended Motion to Dismiss Superseding Indictment, [D.E. 24], should be **DENIED.**

### III. CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendant's Motion to dismiss the Government's Superseding Indictment, [D.E. 24], should be **DENIED**.

Pursuant to Local Magistrate Rule 4(b), the parties have seven (7) days to file written objections, if any, with the District Judge. Failure to timely file objections shall bar the parties from *de novo* determination by the District Judge of any factual or legal issue covered in the Report *and* shall bar the parties from challenging on appeal the District Judge's Order based on any unobjected-to factual or legal conclusions included in the Report. 28 U.S.C. § 636(b)(1); 11th Cir. Rule 3-1; *see, e.g., Patton v. Rowell,* 2017 WL 443634 (11th Cir. Feb. 2, 2017); *Cooley v. Comm'r of Soc. Sec.,* 2016 WL 7321208 (11th Cir. Dec. 16, 2016).

**DONE AND SUBMITTED** in Chambers at Miami, Florida, this 20th day of February, 2023.

*/s/ Edwin G. Torres*
EDWIN G. TORRES
Chief Magistrate Judge